UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RANDI FISHER, as Personal Representative      )
of the Estate of Madison Fisher, Deceased,    )
and individually, and                         )
JASON FISHER,                                 )
        Plaintiffs,                          )
                                      )       No. 1:11-cv-242
-v-                                           )
                                      )       HONORABLE PAUL L. MALONEY
SUSAN LINDAUER,                               )
LEE SALMONSEN,                                )
DEBORAH LARSON,                               )
CAROL WOHLSCHIED, and                         )
UNITED STATES OF AMERICA,                     )
        Defendants.                          )
_____)

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

        This case involves three claims arising out of the death of Madison[1] Fisher: a wrongful-death claim brought on behalf of her estate, and claims for negligent infliction of emotional distress brought by each of Madison's parents, Plaintiffs Randi and Jason Fisher.  Before the court is a motion for partial summary judgment filed by Defendants Susan Lindauer, Deborah Larson, and Carol Wohlschied (as well as several former defendants).  (ECF No. 64.)  Defendant Lee Salmonsen has joined this motion (ECF No. 68), and the United States of America has also concurred with the moving Defendants' analysis (ECF No. 71.)

---

      [1]The documents in this case refer to both "Madison" and "Maddison" Fisher.  Because the case has been docketed using the single-*d* spelling, and no party has moved to correct the caption, the court will use this spelling throughout its opinion.

For the reasons discussed herein, the court will grant the motion as to Plaintiff Jason Fisher and deny it as to Randi Fisher.

I.    **BACKGROUND**[2]

Randi Fisher and her husband, Jason, arrived at the Battle Creek Health System around midnight on October 22, 2008.  Randi was in labor.  She was admitted to the facility's labor and delivery unit, where she stayed through the night.  Around 6:30 a.m., anaesthetic was ordered, but before Randi could be given the epidural, the fetus's heart rate decreased and the shot was called off. The attending physician, Dr. Marti Peters, arrived shortly thereafter.  When the fetus's heart rate did not stabilize, Dr. Peters determined that Randi needed an emergency Caesarian section ("c-section") and called the on-call obstetrician, Dr. Orady.

At 7:10 a.m., Randi was taken into the operating room.  Jason was not allowed to be present during the operation.  After initial attempts to give Randi spinal anaesthesia failed, Randi was put to sleep using general anaesthesia, and Dr. Orady began the operation at 7:22 a.m.  Dr. Orady delivered the baby two minutes later, but it was stillborn.  A resuscitation team attempted to restart the baby's heartbeat, but it was not able to do so.  A later autopsy showed a severe infection of the placenta and fetal membranes (necrotizing chorioamnionitis), with extensive bacterial colonization of the baby's lungs and colon.

The Fishers were then informed about their baby's death—Jason in the waiting room, and Randi in the recovery room after she woke up.  Doctors and at least one nurse spoke with both Randi

---

[2]For the purposes of a motion for summary judgment, these facts, and any inferences drawn from them, are to be viewed in the light most favorable to the nonmoving party—here, Plaintiffs.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (quoting *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

and Jason, explaining what happened and expressing sympathy for their loss. The Fishers were allowed to hold the baby, and the hospital also arranged for a professional photographer to take pictures. The hospital also provided the Fishers with a grief counselor.

On March 11, 2011, Randi and Jason filed suit in this court against an array of doctors and nurses allegedly involved in Randi's medical care, as well as several associated medical organizations. (ECF No. 1.) Plaintiffs filed an amended complaint in September adding the United States of America as a defendant and dropping several earlier-named defendants. (ECF No. 24.) Discovery continued through January 2012, when Defendants Susan Lindauer, Deborah Larson, and Carol Wohlschied (as well as several former defendants) filed the motion for partial summary judgment at issue today. (ECF No. 64.) Defendant Lee Salmonsen has joined this motion (ECF No. 68), and the United States of America has also concurred with the moving Defendants' analysis (ECF No. 71.) Several other motions were filed between January and April 2012 (ECF Nos. 62, 77, 79), but these motions have since been resolved by joint stipulation. (*See* ECF Nos. 84, 92.) In September, the parties stipulated to dismissal of claims against several other defendants. (ECF Nos. 118–120.) On November 13, 2012, the parties presented oral argument on the pending motion for summary judgment.

## II.     LEGAL FRAMEWORK

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56©; *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing

out the absence of evidence to support the nonmoving party's case. *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (quoting *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Once the moving party has carried its burden, the nonmoving party must set forth specific facts in the record showing there is a genuine issue for trial. Fed. R. Civ. P. 56©, (e); *Matsushita*, 475 U.S. at 586. The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## III.  DISCUSSION

Defendants' motion relates only to Randi and Jason's individual claims for negligent infliction of emotional distress. Under Michigan law, the tort of negligent infliction of emotional distress has four requirements:

> (1) a serious injury, of a nature to cause severe mental disturbance to the plaintiff, is threatened or inflicted on a third person;
>
> (2) the shock to the plaintiff must result in actual physical harm;
>
> (3) the plaintiff must be a member of the third person's immediate family, or at least a parent, child, husband or wife; and
>
> (4) the plaintiff must either be present at the time of the accident or suffer shock fairly contemporaneous with the accident.

*See Wargelin v. Sisters of Mercy Health Corp.*, 385 N.W.2d 732, 735 (Mich. Ct. App. 1986). Defendants challenge only the second and fourth elements of this test, arguing that neither Randi nor Jason can show that they have suffered actual physical harm (element two), and that because

4

Jason was not in the operating room and Randi was not conscious for the c-section, neither was "present at the time of the accident" or suffered "fairly contemporaneous" shock, as element four requires.

### A. Element Two – Actual Physical Harm

Defendants first argue that the evidence does not show that Randi and Jason actually suffered physical harm due to their alleged emotional trauma. They note that Jason testified at deposition that he had not seen a physician or counselor and had not taken any medication following Madison's death. And while they admit that Randi had suffered from psychological problems after the death, Defendants note that her problems pre-date her pregnancy and that treatment notes from her current psychiatrist state that she is doing very well.

Plaintiffs cite medical records from Randi's post-surgery hospital stay to show that she afterward suffered from "anxiety, hyperventilation, using oxygen, losing sleep, agitation and panic"; that she had "sudden mood changes," "expressed homicidal ideation against the staff," and showed "Anxiety, Depressed mood, Hopelessness, Impaired concentration, Manic symptoms, Sleep disturbance (decrease), [and] Thought disturbance." These records also show that Randi was later taken to the hospital's psychiatric ward, and her doctor recommended admission to a psychiatric hospital after she was released. Plaintiffs also reference their psychiatry expert's preliminary report regarding Randi, which states that she became "severely depressed" following Madison's death. Finally, Plaintiffs state that the independent medical examinations requested by Defendants should reveal further evidence of the physical harm they have suffered.

As Plaintiffs note, Michigan's courts have broadly construed the "definite and objective physical injury" requirement. The case establishing this rule, *Daley v. LaCroix*, held that a

plaintiff's "sudden loss of weight, her inability to perform ordinary household duties, [and] her extreme nervousness and irritability" satisfied the "physical injury" requirement. 179 N.W.2d 390, 396 (Mich. 1970).  Another early case held that a plaintiff's claims that she had "withdrawn from normal forms of socialization, was for a period of nine months following the accident unable to function as she did previously, and continues in a state of depression" similarly satisfied this standard.  *Toms v. McConnell*, 207 N.W.2d 140, 145 (Mich. Ct. App. 1973).  Under these longstanding precedents, Randi Fisher's alleged symptoms were sufficiently "physical" to avoid summary judgment.  *See Apostle v. Booth Newspapers, Inc.*, 572 F. Supp. 897, 901 (W.D. Mich. 1983) *supplemented*, 577 F. Supp. 962 (W.D. Mich. 1984) ("While a 'definite and objective physical injury' is required, the courts are very lenient in finding allegations sufficient in this regard.").  Defendants' argument that Randi's psychological issues existed long before her pregnancy is simply a factual dispute that should be left to the jury to resolve.

As Defendants pointed out during oral argument, Plaintiffs' argument focused almost entirely on Randi, mentioning Jason only to suggest that the parties' medical experts will likely shine further light on their physical injuries.  But Plaintiffs' own expert, in his Rule-26 report, also discusses only Randi.  (*See* Pl.'s Ex. 6, ECF No. 72-1, at 43–46.)  Jason's deposition testimony does not include any evidence that he had any physical manifestations of injury after Madison's death, and Defendants were able to point to no evidence on this point at oral argument.  To avoid summary judgment, Jason must "cit[e] to particular parts of materials in the record" showing that there is a genuine dispute.  Fed. R. Civ. P. 56©.  He has not done so.  His claim will therefore be dismissed.

## B.      Element Four – Presence at the Time or Fairly Contemporaneous Shock

Defendants also argue that Randi and Jason cannot show that they were sufficiently "present"

at the time of the accident or suffered shock contemporaneous to it.  Randi, they note, was under general anaesthetic during the entire c-section, and Jason was not present in the operating room, so neither could have observed the hospital staff's resuscitation efforts.  Instead, both learned of their baby's death after the fact, in controlled conversations with medical professionals.

Defendants compare this situation with that of two key Michigan precedents, *Wargelin v. Sisters of Mercy Health Corp.*, 385 N.W.2d 732, 735 (Mich. Ct. App. 1986), and *Taylor v. Kurapati*, 600 N.W.2d 670 (Mich. Ct. App. 1999).  In the former case, Mrs. Wargelin was admitted to the defendant hospital after going into labor.  *Wargelin*, 385 N.W.2d at 733–34.  She soon delivered a baby.  Unfortunately, the newborn did not begin breathing.  *Id.* at 734.  The intern who had delivered the baby did not realize this and placed it on Mrs. Wargelin's stomach, before the attending doctor grabbed the baby away and began attempting to resuscitate it.  *Id.*  Mrs. Wargelin then watched approximately fifteen minutes of resuscitation attempts, including the doctor's "pounding on [the baby's] chest, administering shocks, and inserting a long needle into the baby's heart."  *Id.*  The doctor twice called for a pediatrician, but was informed that none were available.  *Id.*  Mrs. Wargelin brought suit against the hospital and various individual defendants, and the trial court granted summary judgment for the defendants.  On appeal, the Michigan Court of Appeals reversed, holding that "the series of negligent acts and resulting events which transpired *in this particular case* were sufficient to enable plaintiffs to proceed to a jury with their causes of action."  *Id.* at 737.

In *Taylor*, plaintiff's baby was born with "gross anatomical deformities[,] including missing right shoulder, fusion of left elbow, missing digits on left hand, missing femur on left leg and short femur on right."  600 N.W.2d at 674–74.  The parents then filed suit, alleging (among other things) a claim for negligent infliction of emotional distress.  The trial court granted summary judgment to

defendants, and the Michigan Court of Appeals affirmed. Though most of the court's opinion dealt with issues regarding the tort of "wrongful birth," the court also specifically addressed plaintiffs' negligence claim. The court held that "[t]he Taylors' claim is fatally flawed" because "both the parents acknowledged that they did not see their child's disabilities at or immediately after her birth." *Id.* at 693. "The Taylors' physician was able to discuss the child's disabilities with the Taylors before they saw her," and so summary judgment was appropriate. *Id.*

In their response, Plaintiffs argue that their presence should not be measured at the time of the Caesarian section and resuscitation attempt, but at the time the baby's heart rate dropped and the Fishers began to realize that the fetus was in distress. Specifically, they state, "Negligence occurred *prior* to the Caesarean section, Plaintiffs witnessed this negligence, and [they] suffered shock at that time." (*See* Pl.'s Br., ECF No. 72, at 9.) Plaintiffs clarified this argument at the court's hearing, pointing to Randi's deposition testimony regarding the time before her c-section. Randi testified that once the baby's heart-rate began dropping, nurses "swarm[ed] her," saying "breathe for [your] life," "breathe for [your] life to save the baby's life." ®. Fisher Depo., Def.'s Br., Ex. 2, at 79.) At one point the heart-rate monitor detached and the nurses couldn't reattach it. Randi heard the nurses saying "that the baby wasn't going to make it . . . that it's been too long and the baby's lodged in the birth canal." (*Id.* at 80.) This traumatic experience, they argue, distinguishes their case from *Taylor*[3] and makes it more analogous to *Wargelin*, where the Court of Appeals allowed the parents'

---

[3]Plaintiffs also argue that the court should disregard *Taylor* because the court spent the vast majority of its opinion discussing the plaintiffs' wrongful-birth claim, leaving the negligent-infliction holding as an "afterthought." This argument fails. A court's holding on one issue is not entitled to less deference simply because it followed a longer discussion of unrelated issues. If anything, the brevity of *Taylor*'s holding suggests that the court found the question an easy one.

8

claim to continue.[4]

The question here is whether Plaintiffs were present at the time of the "accident"—that is, the time of the alleged trauma.  *See Taylor*, 600 N.W.2d at 693.  In the case first establishing the "present at the time . . . or fairly contemporaneous" requirement, the Michigan Court of Appeals took "guidance" from a California case which "held that a mother could not recover for emotional distress which resulted in seeing her daughter some 30 to 60 minutes after the occurrence of an accident."  *Gustafson v. Faris*, 241 N.W.2d 208, 211 (Mich. Ct. App. 1976) (citing *Powers v. Sissoev*, 114 Cal. Rptr. 868 (Cal. Ct. App. 1974)).  Similarly, in *Taylor*, the Court of Appeals dismissed two parents' claims where they "did not see their child's disabilities at or immediately after her birth."  600 N.W.2d at 693.  Defendants' argument assumes that the baby's stillbirth was the relevant traumatic event here, and so the Fishers' presence should be measured as of that time.  But this misconstrues Plaintiffs' claim.  At oral argument, Plaintiffs specifically limited their claim to events that happened before Randi was taken into the operating room for her c-section.  These events alone, they argue, constituted negligent infliction of emotional distress.

So limited, Plaintiffs' claim satisfies this element.  Randi Fisher was undisputedly present and conscious during the time before her c-section, and so Defendants' arguments are misplaced.  It will be up to the jury to determine whether these pre-surgery events are sufficient to establish negligent infliction of emotional distress.

---

[4]Neither party's citation to *Wargelin* is appropriate here.  That case did not address the "presence" requirement, but rather the "serious injury" requirement.  *See Wargelin*, 385 N.W.2d at 735 ("Defendants maintain . . . that plaintiffs cannot establish the first *Gustafson* element, a serious injury of a nature to cause severe mental disturbance.").

## **ORDER**

For the reasons discussed above, Defendants' motion for partial summary judgment (ECF No. 64) is hereby **GRANTED IN PART** as to Plaintiff Jason Fisher's claim for negligent infliction of emotional distress and **DENIED IN PART** as to Plaintiff Randi Fisher's claim for negligent infliction of emotional distress.

**IT IS SO ORDERED.**


Date:   November 15, 2012                       /s/ Paul L. Maloney
                                              Paul L. Maloney
                                              Chief United States District Judge

10